IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES JOHNSON,

        Plaintiff,                       No. CIV S-06-2068 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.                ORDER
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff did not continue to be disabled for purposes of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated January 25, 2005, the ALJ determined plaintiff was no longer disabled and that his disability ceased on March 1, 2004.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff was initially found disabled on April 1, 2000; plaintiff has severe impairments of status post gunshot wound to the back and right thigh, intermittent sciatica, gastritis, history of left ankle ORIF (open reduction, internal fixation), and history of resolved right wrist tendonitis but that these impairments do not meet or medically equal a listed impairment; the impairments present as of August 28, 2000, the time of the most recent favorable decision, were status post gunshot wound to the back and right thigh, status post ORIF with hardware placement on the left ankle with abnormal neurological findings, abnormal gait and documented need for a cane; plaintiff's medical condition has improved since the date of the most recent favorable decision; plaintiff is not totally credible; plaintiff has the residual functional capacity to perform light work; plaintiff cannot perform his past relevant work; using Medical-Vocational rules 202.13 and 202.14, plaintiff is not disabled; and plaintiff's disability ceased on March 1, 2004.   Administrative Transcript ("AT") 29-30.   Plaintiff contends the ALJ failed to include all of his impairments at step two of the sequential analysis, improperly rejected the opinions of treating and examining physicians, improperly discredited his testimony, and should have obtained the testimony of a vocational expert.

/////

/////

---

[1] Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a).
  In this case, plaintiff's disability benefits were terminated pursuant to a continuing disability review (CDR). This type of review is routinely conducted by the Commissioner to determine whether an individual is still disabled. 20 C.F.R. § 416.994.

II. <u>Standard of Review</u>

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts. Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled. "Once a claimant has been found to be disabled, . . .a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." <u>Bellamy v. Secretary of Health & Human Serv.</u>, 755 F. 2d 1380, 1381 (9th Cir. 1985); <u>see</u> <u>also</u> <u>Saltzman v. Apfel</u>, 125 F. Supp. 2d 1014 (C.D. Cal. 2000) (same). This evidence then is reviewed under the substantial evidence standard. <u>Saltzman</u>, 125 F. Supp. 2d at 1019 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 500 (9th Cir. 1983)).

Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Id.</u>; <u>see also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

III.  Analysis

    A.  Severity of Impairment

        Plaintiff contends the ALJ improperly assessed the severity of his impairments. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of the severity inquiry is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).[2]

        Plaintiff argues the ALJ failed to recognize as severe impairments his diagnosed conditions of degenerative disc disease, right leg neuralgia, adjustment disorder with depressed and anxious mood, and hypnosedative-related disorder. Plaintiff contends that because the ALJ did not consider these disorders to be severe impairments, any consideration of work limitations resulting from these disorders was improperly excluded from the sequential analysis. Review of the ALJ's decision demonstrates the fallacy of this argument. The ALJ specifically considered throughout the sequential analysis the pain associated with plaintiff's degenerative disc disease and right leg neuralgia. AT 25-28, 304-307, 346-350, 515-516. The ALJ also considered plaintiff's claimed limitations associated with his asserted mental impairment and the effects on plaintiff's ability to concentrate. AT 27. There was no error in the step two analysis.

/////

/////

---

[2] In this case, the severity analysis occurs at step five of the sequential analysis conducted under the continuing disability review. 20 C.F.R. § 416.994. This step is equivalent to the step two analysis for determining disability in the first instance. 20 C.F.R. § 416.920.

B.  Medical Opinions

Plaintiff also contends the ALJ improperly rejected the opinions of treating physician Dr. Varughese and examining psychiatrist Dr. Moghaddas.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Varughese, plaintiff's treating physician, opined in a medical report for general assistance, dated July 5, 2005, that plaintiff could perform no work and that this disability was permanent.  AT 515-516.  The limitations assessed were that plaintiff was unable

to stand for a prolonged time and was totally incapable of lifting secondary to pain. AT 516. The ALJ accorded no weight to Dr. Varughese's opinion. AT 27. Instead, the ALJ credited the opinion of examining physician, Dr. McIntire, who opined plaintiff could lift 25 pounds frequently or 50 pounds occasionally. AT 25, 28, 306-307. The ALJ, however, gave plaintiff the benefit of the doubt and limited plaintiff to light work.³ AT 28. While the ALJ properly noted Dr. Varughese examined plaintiff a minimal number of times, and only once for back pain, it does not appear the ALJ considered whether other medical records from MedClinic were available to Dr. Varughese. AT 27, 378-514. Review of those records, however, supports the ALJ's conclusion that Dr. Varughese's conclusions were significantly out of proportion to the objective clinical findings, including negative EMG, good range of motion of the lower extremity and negative straight leg test. See AT 384 (normal exam in January 2005), 390 (normal exam in May 2004), 406 (normal exam in September 2003), 464 (paperwork filled out by Dr. Varughese who performed physical exam only for abdominal complaints), 470 (exam by Dr. Varughese in May 2005 normal except small muscle spasms when hyperflexed), 478 (normal EMG); cf. AT 481 (generally normal exam in March 2005 except absent Achilles reflex on right and positive straight leg at 25 degrees). It was within the province of the ALJ to resolve the conflict in the medical opinions in favor of Dr. McIntire, whose opinion rested on his own independent clinical findings, and that of the state agency physician, who assessed limitations similar to those of Dr. McIntire. AT 28, 312-319.

        Plaintiff also contends the ALJ improperly rejected the opinion of examining psychiatrist, Dr. Moghaddas, who opined plaintiff showed a moderately significant degree of impairment of pace and persistence and, under the influence of hypnosedative medication, showed impairment of concentration to a moderate degree. AT 350. The ALJ properly rejected

---

³ 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.

the limitations assessed by Dr. Moghaddas as inconsistent with the doctor's own observations during the exam and as relying on embellished symptoms. AT 27, 349. The ALJ also noted the normal cognitive exam of Dr. McIntire. Although Dr. McIntire is not a specialist in psychiatry, given the lack of clinical findings by Dr. Moghaddas, there was no error in considering the normal cognitive presentation evident at plaintiff's examination in February 2004, just a few months prior to Dr. Moghaddas' examination. AT 304-307. The ALJ also appropriately considered plaintiff's lack of mental treatment in according no weight to Dr. Modhaddas' limitations. AT 27. Although the ALJ did not specifically address the GAF of 50 assessed by Dr. Moghaddas, there was no error in failing to do so. The GAF does not correlate to the severity assessments utilized in Social Security disability determinations.[4] The state agency psychiatrist, while assessing plaintiff with moderate limitations in maintaining attention and concentration for extended periods, also assessed plaintiff as not significantly limited in most of the categories for sustained concentration and persistence and ultimately assessed plaintiff as having the ability to perform simple repetitive tasks. AT 354, 356. On this record, there was no error in the weight accorded by the ALJ to the opinions of Drs. Varughese and Moghaddas.

/////

/////

---

[4] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

    Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D. They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
    Response: We did not adopt the comment. We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

C. Credibility

Plaintiff further contends the ALJ improperly discredited his testimony. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering,

8

1  the Commissioner's reasons for rejecting the claimant's testimony must be clear and
2  convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.
3  1999).

4        Plaintiff testified he could only lift three pounds on a routine basis, he could not
5  sit for very long and that he used a cane all the time  AT 529-531.  The ALJ found plaintiff's
6  testimony not credible for several reasons.  AT 28.  The ALJ noted that plaintiff used a cane but
7  there was no medical necessity for it.  AT 28, 305 (examiner found no need for cane); see also
8  AT 385 (plaintiff ambulated into exam room without any assistive device and advised by treating
9  physician he did not qualify for long term SSI).  Although the medical records also indicate that
10 plaintiff was prescribed a cane for use when there was moderate or severe pain and plaintiff
11 testified he used a cane all the time, the ALJ appropriately considered the examining physician's
12 opinion in discounting plaintiff's assertion that he needed a cane all the time.  AT 248, 531.  The
13 ALJ also considered plaintiff's embellishment on physical exam and plaintiff's failure to comply
14 fully with physical testing.  AT 25, 28, 305, 306.  The ALJ also factored into the credibility
15 analysis plaintiff's normal findings on physical exam and treatment regimen for pain, which
16 included only conservative treatment and few back pain complaints during the relevant time
17 period.  AT 28, 383, 390, 464, 468, 470-473, 478, 482.  The ALJ also appropriately accorded
18 some weight to plaintiff's apparent lack of discomfort during the hearing as indicative of a level
19 of pain less than that attested to by plaintiff. AT 28.  See Drouin v. Sullivan, 966 F.2d 1255,
20 1259 (9th Cir. 1992) (general demeanor and behavior at the hearing are appropriately factored
21 into the credibility determination).  While the ALJ's characterization of plaintiff's activities of
22 daily living is not supported by the record, the other factors considered by the ALJ were valid and
23 supported.  The ALJ's credibility determination was based on permissible grounds and will not
24 be disturbed.
25 /////
26 /////

D.  Grids

Plaintiff contends the ALJ should have consulted a vocational expert instead of relying on the grids to find plaintiff was not disabled.  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).  The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

10

Plaintiff's contention that the ALJ should have consulted a vocational expert is premised on the limitations assessed by Drs. Varughese and Moghaddas. As discussed above, the ALJ properly rejected the opinions of these doctors. As the ALJ's assessment of plaintiff's residual functional capacity did not include any significant nonexertional limitations and the assessment is supported by the record, there was no error in relying on the grids to find plaintiff was not disabled.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED: March 28, 2008.

_____
U.S. MAGISTRATE JUDGE

006
johnson4.ss